### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | |
|---|---|
| In re: | ) |
| | ) |
| | ) Chapter 15 |
| SIU-FUNG CERAMICS HOLDINGS LIMITED (HCCW no. 279 of 1999); | ) |
| | ) Case No. 24-33299 |
| | ) |
| SIU-FUNG CERAMICS CONCEPT COMPANY LIMITED (HCCW no. 280 of 1999); | ) |
| | ) |
| NHD SYSTEMS (HOLDINGS) LIMITED (HCCW no. 277 of 1999); | ) |
| | ) |
| NHD SYSTEMS (ASIA) LIMITED (HCCW no. 278 of 1999) | ) |
| | ) |
| SIU FUNG CONCEPT LIMITED (HCCW no. 510 of 2000); | ) |
| | ) |
| LEE SIU FUNG, SIEGFRIED (HCB no. 345 of 2001); | ) |
| | ) |
| LEE SIU FUNG, SIEGFRIED (HCB no. 454 of 2023), | ) |
| | ) |
| Debtors in Foreign Proceedings. | ) |
| | ) |

**FOREIGN REPRESENTATIVES[1] REPLY IN FURTHER SUPPORT OF MOTION FOR LEAVE TO FILE MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO THE 11 U.S.C. 109 JURISDICTIONAL ISSUE RAISED BY THE COURT AS TO THE CORPORATE DEBTORS' CHAPTER 15 PETITION AND OPPOSITION TO LEE'S MOTION TO STRIKE**

---

[1] Alan CW Tang ("Tang"), Anita CM Hou ("Hou") and Terry LK Kan ("Kan") of Shinewing (HK) ("Shinewing"), the duly appointed Joint and Several Liquidators and/or Trustees and authorized foreign representatives (the "Foreign Representatives" or "FRS").

230493301 v1

**ARGUMENT AND AUTHORITIES**

Lee's opposition to the FRS' motion to amend ("Motion" and "Lee Opposition") is a paradoxical diatribe which utterly fails to address, let alone rebut the FRS' (i) entitlement to amend the Petition as a matter of right under FED. R. BANKR. P. 1009 ("Rule 1009") and (ii) showing that, as a matter of law, the $1,200 retainer ("Retainer") with Archer & Greiner, P.C. ("Archer") constitutes the Corporate Debtors' property in the United States.  Lee's mudslinging tirade against Tang's character as the main basis for his opposition is hypocritical given Lee's own dishonest testimony and his history as a fraudster.  Moreover, Lee's mudslinging is untrue, unsupported and denied.

## A.  <u>THE FRS MAY AMEND THE PETITION AS A MATTER OF RIGHT.</u>

The Lee Opposition simply seeks to avoid the FRS' ability to amend the Chapter 15 Petition ("Petition") as a matter of right under Rule 1009, which provides, in pertinent part, that "(1) ……… [a] debtor may amend a voluntary petition, list, schedule, or statement at any time before the case is closed. The debtor must give notice of the amendment to the trustee and any affected entity." *Id*. Lee's opposition papers are devoid of any legal authority to the contrary or, for that matter, any authority for his proposition that a motion for leave to amend is required.[2] Rule 1009 does not require a motion to amend but notice to the trustee and anyone opposing the Petition. Here, notice was sent to Lee and the U.S. Trustee on April 16, 2025 (Lee's counsel was copied on the emails which provided such notice, and a Certificate of Service was filed at [Doc. # 113]).

---

[2] Regardless, in their motion seeking leave to file the MSJ, the FRS demonstrated good cause to permit the amendment and the lack of prejudice to the Corporate Debtors. Lee has throughout these proceedings distanced himself from the Corporate Debtors. Lee and his counsel clearly do not represent the Corporate Debtors and have not filed any pleadings indicating that Lee appears in these Chapter 15 Cases (at times herein, the "Cases") in anything but his individual capacity.

---

**FOREIGN REPRESENTATIVES REPLY IN FURTHER SUPPORT OF MOTION FOR LEAVE TO FILE MOTION FOR   PARTIAL SUMMARY JUDGMENT AS TO THE 11 U.S.C. 109 JURISDICTIONAL ISSUE RAISED BY THE COURT AS TO THE CORPORATE DEBTORS' CHAPTER 15 PETITION AND OPPOSITION TO LEE'S MOTION TO STRIKE**

Lee takes the unbelievable position that the FRS do not act as the joint and several liquidators of the Corporate Debtors in Hong Kong. This is despite the FRS acting as such in the pending corporate insolvency proceedings in Hong Kong for many years to date. There has been no evidence from Lee (i) refuting the FRS' appointment; (ii) disputing the FRS' continuing obligations under Hong Kong law to administer the Corporate Debtors' estates, including investigation and recovery of claims; or (iii) constituting an order closing any of the Corporate Debtors liquidation proceedings in Hong Kong. The Court will hear more about Lee's erroneous contentions in this respect from the FRS' legal expert, Kingsley Ong.

In fact, Lee's position is explicitly contrary to both Hong Kong and U.S. law recognizing Hong Kong Liquidation proceedings pursuant to a Chapter 15 petition brought by Hong Kong Liquidators. *See, e.g., In re Manley Toys Ltd.*, 580 B.R. 632 (Bankr. D.N.J. 2018), *aff'd*, 597 B.R. 578 (D.N.J. 2019) (Hong Kong Liquidators of Chinese toy company in voluntary liquidation, which had ceased operations, granted recognition under Chapter 15); *see, also*, Creditors Winding Up and Miscellaneous Provisions ("CWUMPO"), setting forth the appointed liquidators' duties in compulsory winding up proceedings, which continue until their discharge as liquidators. The Court will hear more about these Hong Kong legal issues from Mr. Ong.

## B.  THE CORPORATE DEBTORS HAVE AN INTEREST IN THE U.S. RETAINER DEPOSITED WITH ARCHER & GREINER, PC.

Despite Lee's bold, unsupported statements to the Court, Lee cannot dispute the following: 1) the FRS were appointed by the Hong Kong High Court as the representatives of the Corporate Debtors, have submitted to this Court unrefuted proof of same and, as a matter of Hong Kong law, possess the authority and standing to investigate, administer and liquidate the Corporate Debtors'

---

**FOREIGN REPRESENTATIVES REPLY IN FURTHER SUPPORT OF MOTION FOR LEAVE TO FILE MOTION FOR  PARTIAL SUMMARY JUDGMENT AS TO THE 11 U.S.C. 109 JURISDICTIONAL ISSUE RAISED BY THE COURT AS TO THE CORPORATE DEBTORS' CHAPTER 15 PETITION AND OPPOSITION TO LEE'S MOTION TO STRIKE**

assets, including claims in United States; 2) funds that are held in the United States to pay for law

firm services for a debtor (including those who stand in debtor's shoes) constitute a debtor's

property that is located in the United States[3]; 3) the $1,200 Retainer was deposited by the FRS on

behalf of the Corporate Debtors into Archer's Texas IOLTA account [Doc. #s 97 and 97-1]; and

4) the Corporate Debtors have money in estate accounts with the HK Official Receiver ("HK

OR")[4] which Tang has declared to this Court will be used to reimburse him for the Retainer

advanced on behalf of the Corporate Debtors. [*See* attached hereto, Tang's 2nd Supplemental

Declaration with attached statements from the HK OR accounts already filed at [Doc. # 112-3 at

Exhibit 237]].[5]

Regardless of whether the Retainer was funded directly from the HK OR (which it

ultimately will be), from Tang's own pocket, or from anyone else, the result is the same under 11

U.S.C. § 109 ("Section 109") and *In re Barnet*'s progeny: "the existence of funds from which a

client is entitled to fund U.S. legal services is sufficient to satisfy Section 109, **whoever sent the**

---

[3] *See In re JPA No. 111 Co., Ltd.*, No. 21-12075 (DSJ), 2022 WL 298428, at *5-7 (Bankr. S.D.N.Y. Feb. 1, 2022) (Holding that "funds that are held in the United States to pay for law firm services for a debtor constitute a debtor's property that is located in the United States…"); *In re Serviços de Petróleo Constellation S.A.,* 600 B.R. 237, 268 (Bankr. S.D.N.Y. 2019); *In re U.S. Steel Canada Inc.*, 571 B.R. 600, 610 (Bankr. S.D.N.Y. 2017*); In re Berau Capital Res. Pte Ltd*, 540 B.R. 80, 81-82 (Bankr. S.D.N.Y. 2015); *In re Indep. Eng'g Co., Inc.*, 232 B.R. 529, 533 (B.A.P. 1st Cir. 1999), aff'd, 197 F.3d 13 (1st Cir. 1999).

[4] The reason the funds were advanced by Tang was because it takes time (several months at best) to withdraw these funds from the HK OR accounts.  The FRS' expert will testify as to this fact.  As such, the money was merely advanced by Tang for the Corporate Debtors and Tang will be paid back from the HK OR accounts as Tang's letter to the HK OR amply demonstrates. Nonetheless, it is irrelevant where the funds came from as long as the Corporate Debtors' have an interest or right to the funds which they do and is an indisputable fact. *See In re JPA No. 111 Co., Ltd*., *supra* ("the existence of funds from which a client is entitled to fund U.S. legal services is sufficient to satisfy Section 109, **whoever sent the funds to counsel**.") (emphasis added).

[5] As the instant Motion only concerned the FRS' request for leave to file an MSJ and was not the actual MSJ itself (which would delve into the merits of the amendment to the Petition with all evidence in support), these were not included in the motion for leave. However, due to Lee's asserted merit-based arguments, the inclusion of HK OR records which were filed at Doc. # 112-3 at Exhibit 237 and attached to Tang's 2nd Supplemental Declaration in this reply is now necessitated.

---

**FOREIGN REPRESENTATIVES REPLY IN FURTHER SUPPORT OF MOTION FOR LEAVE TO FILE MOTION FOR   PARTIAL SUMMARY JUDGMENT AS TO THE 11 U.S.C. 109 JURISDICTIONAL ISSUE RAISED BY THE COURT AS TO THE CORPORATE DEBTORS' CHAPTER 15 PETITION AND OPPOSITION TO LEE'S MOTION TO STRIKE**

**funds to counsel."** *See In re JPA No. 111 Co., Ltd.*, *supra* (holding that "funds that are held in the United States to pay for law firm services for a debtor constitute a debtor's property that is located in the United States…") (emphasis added); *In re Octaviar Admin. Pty Ltd*, 511 B.R. 361, 373-374 (Bankr. S.D.N.Y. 2014) (Section 109(a) says, simply, that the debtor must have property; **it says nothing about the amount of such property <u>nor does it direct that there be any inquiry into the circumstances surrounding the debtor's acquisition of the property, and is thus consistent with other provisions of the Code that reject lengthy and contentious examination of the grounds for a bankruptcy filing.</u>"**) (emphasis added). In short, Tang's credibility or alleged lack thereof is simply not relevant to the issue at hand.

Lee's further attempts to obfuscate the issue, by resorting to the holding and factual findings in *In re Yukos Oil Co.* ("Yukos Chapter 11 Case")*,* 321 B.R. 396, 407 (Bankr. S.D. Tex. 2005) ("Yukos Chapter 11 Court")*,* is equally unavailing, as the Yukos Chapter 11 Case on the contrary supports the FRS' position herein.  First, the Yukos Chapter 11 Court determined that the funds deposited in the U.S., as to which the debtors had an interest, were sufficient for standing under 11 U.S.C. § 109.  Second, unlike the Yukos Chapter 11 Case, this Court has yet to hear the testimony of the parties' experts. *Id.* at 403-404.  Third, completely dissimilar to the facts, circumstances, and issues presented here, the Yukos Chapter 11 Court's dismissal of the petition was predicated on the Act of the State Doctrine and Section 1112(b) of the Bankruptcy Code, as petitioner Yukos was seeking relief in the form of reorganization. *Id.* at 409-411.

As such, Lee's claim that Tang is attempting to do what the Court forbade the petitioner Yukos from doing is quite a stretch to put it mildly and is just further evidence that Lee is just throwing "legal spaghetti" at the wall with the hope that something may stick. In any event, Lee

---

**FOREIGN REPRESENTATIVES REPLY IN FURTHER SUPPORT OF MOTION FOR LEAVE TO FILE MOTION FOR   PARTIAL SUMMARY JUDGMENT AS TO THE 11 U.S.C. 109 JURISDICTIONAL ISSUE RAISED BY THE COURT AS TO THE CORPORATE DEBTORS' CHAPTER 15 PETITION AND OPPOSITION TO LEE'S MOTION TO STRIKE**

clearly has no factual or legal predicate for attacking the merits of the amendment to the Chapter 15 Petition.

C. **PARADOXICALLY LEE IS THE ONE WHO HAS MADE FALSE STATEMENTS INCLUDING TO THE COURT AND WAS FOUND BY THE HONG KONG GOVERNMENT TO BE A FRAUDSTER**.

First, and in defiance of any fundamental framework in national/international insolvency regimes, Lee appears to incredibly claim in his opposition papers that the FRS do not stand in the shoes of the Corporate Debtors. Lee advances this claim despite Lee's admission on the stand to the contrary, as well as the undisputed documentary evidence admitted, that Tang and others were re-appointed by the Hong Kong High Court in 2016 as the liquidators of the Corporate Debtors who have the authority under Hong Kong law to act for the Corporate Debtors until their appointment is terminated by the Court. [*See* Exhibits 8-12, 177].

Second, the 350 boxes of records for the whole of the Siu Fung Group of over 40 companies pre-liquidation in 2000, which Lee admitted on the stand contain only materials from 1991 to 1998, are irrelevant to these proceedings, as well as the issues previously before Justice Lam when he entered discovery orders permitting the FRS to fully investigate the entire scope and reach of Lee's schemes, which clearly do not concern the materials from 1991 to 1998.   As such, Lee's attempt to twist the relevance and impact of the 350 boxes as to Justice Lam's decision and the matters before this Court are disingenuous and unavailing.

Third, Lee has purposefully concealed documents and information despite his contrary position before this Court that he had no access to any of the germane and requested documents. Lee cannot hide from the fact that he has had access and/or the right to access the numerous specific categories of documents and materials that Justice Lam ordered Lee to produce in 2016. [*See*

**FOREIGN REPRESENTATIVES REPLY IN FURTHER SUPPORT OF MOTION FOR LEAVE TO FILE MOTION FOR   PARTIAL SUMMARY JUDGMENT AS TO THE 11 U.S.C. 109 JURISDICTIONAL ISSUE RAISED BY THE COURT AS TO THE CORPORATE DEBTORS' CHAPTER 15 PETITION AND OPPOSITION TO LEE'S MOTION TO STRIKE**

Exhibits 67-72, 73-75, 77-101, 114-117, 128-135, 191-194, 219-222, and [Doc. # 101 at Exhibit 234 at pp. 33 and 89]]. Indeed, Lee's excuses for not producing the Hong Kong Court ordered documents have readily shifted during these proceedings. Lee had initially claimed that he had no ability to access any of the documents despite his position with ROY and Lion Legend and despite his family member's positions with the other companies encompassed in Justice Lam's order.

Notably, Lee recently testified under oath that he can disobey Justice Lam's orders because he believes, despite Justice Lam's consideration and rejection of Lee's arguments, including but not limited to the personal discharge from bankruptcy argument, that the FRS have no right to the documents due to his bankruptcy discharge. Now Lee claims that he is obeying Justice Lam's orders and doing his "best" to obtain and produce these documents. However, despite Lee's recent bogus claim to this Court on the stand to the contrary, Lee has absolutely no intention to provide any documents or to return to Hong Kong to testify. [*See* Doc. #s 112-1 and 112-2 at Exhibits 235 and 236 respectfully which were recently filed by Lee in Hong Kong]. Paradoxically, Lee represents to the Hong Kong Court that he is providing discovery to the FRS' in the Chapter 15 proceeding while at the same time opposing any further discovery efforts by the Liquidators in the US, including in these Chapter 15 proceedings. Lee's arguments are duplicitous.

Fourth, Lee has admitted on the stand that he has made misrepresentations to governmental officials that go beyond those demonstrated in the Hong Kong Insider Trading Tribunals' findings. For example, Lee clearly misrepresented his country of birth to governmental officials in order to obtain a British passport and has known of the "error" since the day he received the passport and has yet to address the so called "error".

---

**FOREIGN REPRESENTATIVES REPLY IN FURTHER SUPPORT OF MOTION FOR LEAVE TO FILE MOTION FOR   PARTIAL SUMMARY JUDGMENT AS TO THE 11 U.S.C. 109 JURISDICTIONAL ISSUE RAISED BY THE COURT AS TO THE CORPORATE DEBTORS' CHAPTER 15 PETITION AND OPPOSITION TO LEE'S MOTION TO STRIKE**

Fifth, Lee has sworn under oath both here and in Hong Kong that he has had nothing to do with Lion Legend and that it does not conduct any business activity.  [*See, e.g.,* Exhibits 200 at p. 38 ("from 2015 I am no longer a director of Lion Legend") and 231 at ¶¶ 17 and 18 ("The only Hong Kong company I was involved in since 2001 was World Cheer Enterprises Limited"… [a]part from World Cheer I have not started or gotten involved in any Hong Kong company after my discharge from bankruptcy")].  However, the Lion Legend documents obtained by the FRS thus far, despite Lee's attempts to stop further production of same by his agents in Hong Kong (from a secretarial company he supposedly has nothing to do with) and the California Court's decision pertaining to Ms. Wen's lawsuit against ROY, expressly demonstrate and hold otherwise. [*See* Exhibits 77-101, 115, 131-135, 191, 194, 201, 219-222].

Sixth, Lee has claimed extensively that his brother, Benjamin Li, was the one who purchased the 36 percent shares in BSW. However, his brother testified under oath in Hong Kong that he had nothing to do with the purchase. The Liquidators will have Benjamin Lee's transcript testimony translated prior to final submissions. However, for now, the Court is respectfully directed to Exhibit 173 at ¶¶ 24 to 24.4 and Exhibit 196.  Significantly, Benjamin's Li's affirmation to the Hong Kong Court states:

> 24.2 It was Kingbridge which acquired 36% shareholding in BSW for HK$17 million. However, as I have explained in paragraph 34.1(b) of Li 1', Kingbridge was in fact a wholly-owned subsidiary of World Cheer, which was at that time beneficially owned as to 40% by Ms. Wong Ying, as to 35% by Yip Siu Yin and as to 25% by Mr. Fu De Liang, who, as stated, in the BSW Announcement, were independent from and not connected with me (amongst other people). **In the circumstances, there was no reason why any part of the HK$17 million would have been sourced, or expected to be sourced, from me** (emphasis supplied).

---

**FOREIGN REPRESENTATIVES REPLY IN FURTHER SUPPORT OF MOTION FOR LEAVE TO FILE MOTION FOR   PARTIAL SUMMARY JUDGMENT AS TO THE 11 U.S.C. 109 JURISDICTIONAL ISSUE RAISED BY THE COURT AS TO THE CORPORATE DEBTORS' CHAPTER 15 PETITION AND OPPOSITION TO LEE'S MOTION TO STRIKE**

Together with another 20% in BSW held directly by SFC (via Kingbridge), which was transferred for no consideration to World Cheer in [1999] and hidden from the Liquidators since 2000, Lee has before and shortly after his bankruptcy, in the aggregate owned 56% of BSW without ever disclosing these as his assets, most notably to the FRS.

Seventh, Lee lied to the Hong Kong Court in a sworn affirmation on December 28, 2018. Lee swore that he was never a director of World Cheer and never had any interest in the company. [*See* Exhibit 199 at ¶ 14].  Not surprisingly for Lee, in his most recent affirmation to the Hong Kong Court sworn to on April 15, 2025, Lee swore under oath that the only Hong Kong company he was involved with since 2001 was in fact World Cheer, where he was a director and company secretary from May 2015 to January 2017. [*See* Exhibit 231 at ¶ 17].

Eight, Lee has misrepresented to this Court in the Lee Opposition that the FRS' case-in-chief is closed when it is clearly not. The FRS have not rested their case and Lee's counsel has acknowledged this in attempting to schedule with the Court both the FRS' and Lee's expert testimonies. Further, if permitted by the Court, Mr. Tang would testify in rebuttal to Lee's many misstatements and lies on direct.

In short, it is Lee who was found to be a fraudster by the Hong Kong government. It is Lee who claims that the Hong Kong proceedings are stagnate and "over" but who (as well as his many family members) continues to file lengthy affirmations and pleadings therein in order to justify why he has (they have) failed to abide by the discovery Order(s) of Justice Lam and, for Lee to pay costs ordered against him by Justice Lam in favor of the FRS. It is Lee who left Hong Kong in around 2017 to avoid the FRS' and the Hong Kong Court's further scrutiny. It is Lee who owes the FRS in his bankruptcy proceeding pending in Hong Kong in excess of $1,000,000 of Court

---

**FOREIGN REPRESENTATIVES REPLY IN FURTHER SUPPORT OF MOTION FOR LEAVE TO FILE MOTION FOR   PARTIAL SUMMARY JUDGMENT AS TO THE 11 U.S.C. 109 JURISDICTIONAL ISSUE RAISED BY THE COURT AS TO THE CORPORATE DEBTORS' CHAPTER 15 PETITION AND OPPOSITION TO LEE'S MOTION TO STRIKE**

ordered costs against him in 2016 in connection with the ongoing S29 bankruptcy discovery proceedings.

Lee accuses Tang of perpetuating litigation tactics in this Case merely to collect a judgement against Lee for $1,000,000. Although Tang has repeatedly said that is not the case, (as he has already obtained such enforcement order in California) that he seeks discovery in this Case from Lee in the United States in order to bring litigation claims of the Corporate Debtors against Lee and his myriad of U.S. entities formed in the name of ROY after the transfer of $60,000,000 of funds from or via Lion Legend to the United States, utilizing Chapter 15 as a litigation tactic for such assistance and discovery does not provide Lee with a meritorious defense to recognition. See *In re Culligan Ltd.*, 2021 WL 2787926 (Bankr. S.D.N.Y. July 2, 2021).[6]

### D. THE FRS VIA THE CORPORATE DEBTORS CLEARLY HAVE CLAIMS IN THE U.S.

The FRS have not abandoned in any manner the Corporate Debtors' claims in the United States against Lee and his cohorts for continuous fraud, fraudulent concealment, constructive fraud, and fraud by omission, among others.  The Court recently noted to counsel and the parties that it does not intend to delve into the merits of these substantive claims, which would presumably include issues ancillary to them such as a statute of limitations, the discovery rule, and the like (in the US and/or in Hong Kong). Indeed, such an undertaking in this Case would involve a complex

---

[6] In *In re Culligan Ltd.*, the plaintiffs opposed the recognition petition, arguing that: (i) the foreign representatives were forum shopping and commenced the case to enjoin the NY litigation and thereby circumvent the adverse rulings of the state court; and (ii) the foreign representatives filed the chapter 15 petition in bad faith and for the improper purpose of barring the plaintiffs from prosecuting the NY litigation by application of the automatic stay. According to the plaintiffs, the foreign representatives filed the Chapter 15 case in bad faith because the debtor was merely a nominal defendant in the NY litigation, it would not incur any liability, and its litigation costs were covered by insurance. They also asserted that the foreign representatives were not seeking a stay to provide breathing room to conduct good-faith liquidation efforts but, rather, improperly seeking chapter 15 recognition and application of the stay to permanently enjoin—as distinguished from merely to pause—the NY litigation.

---

**FOREIGN REPRESENTATIVES REPLY IN FURTHER SUPPORT OF MOTION FOR LEAVE TO FILE MOTION FOR   PARTIAL SUMMARY JUDGMENT AS TO THE 11 U.S.C. 109 JURISDICTIONAL ISSUE RAISED BY THE COURT AS TO THE CORPORATE DEBTORS' CHAPTER 15 PETITION AND OPPOSITION TO LEE'S MOTION TO STRIKE**

analysis of the conflict of laws issue to be presented in determining which law (including but perhaps not limited to, Hong Kong, Texas, and/or California law) is applicable to the FRS' claims, as well as a deep dive into each jurisdiction's laws as to the discovery rule and fraudulent concealment and related doctrines.[7]

For now, the FRS submit that they have established by clear evidence that the FRS hold claims of the Corporate Debtors against Lee[8] and the ROY entities in the United States. Lee is the direct or indirect beneficial owner of a 56% interest in BSW, having more than likely used funds from the "sale" of the Siu Fung Joint Ventures in China to purchase ("via his brother") the 36% interest, plus the 20% acquired by World Cheer in [1999] that were not disclosed to the Hong Kong Court and the FRS. Lee's scheme began prior to the Hong Kong proceedings but has continued unabated to this day, consisting of continuing, intentional misrepresentations and omissions, asset and information hiding, transfers of 60 million U.S. dollars of cash to the United States and affirmative acts to conceal the true nature of these transfers to the U.S. from the FRS and the Hong Kong Court. Whether the FRS can ultimately prove the foregoing is, respectfully, not for this Court to decide in its determination whether to grant recognition, but, rather, only that the FRS have justiciable claims which may be brought in the U.S. on behalf of one or more of the Corporate Debtors. Contrary to Lee's statement, there is no case law providing that claims must

---

[7] The FRS do not believe for purposes of Chapter 15 recognition that they are required as a matter of law to "prove their case" but, rather, only to submit evidence of justiciable claims of the Corporate Debtors against Lee and his entities and cohorts. Moreover, Lee's continuing fraud is not just about his fraudulent concealment, but also as to his continuing scheme to execute his fraud on the FRS as well as reap the benefits and rewards of his scheme which continues to this day. For example, Lee had to effectuate the sale of the hidden and concealed assets and move the funds gained from the sale outside of the Hong Kong Court's reach and jurisdiction to the United States.

[8] As detailed to the Court in Hong Kong and this Court, the FRS have other claims they wish to bring in the U.S. against Lee for fraud on the FRS and bankruptcy estates in Hong Kong. These claims certainly include the sale of the DSW interest to Kingsbridge but are not limited to that claim.

---

**FOREIGN REPRESENTATIVES REPLY IN FURTHER SUPPORT OF MOTION FOR LEAVE TO FILE MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO THE 11 U.S.C. 109 JURISDICTIONAL ISSUE RAISED BY THE COURT AS TO THE CORPORATE DEBTORS' CHAPTER 15 PETITION AND OPPOSITION TO LEE'S MOTION TO STRIKE**

be brought in the foreign main or non-main insolvency proceeding or in the ancillary jurisdiction

prior to Chapter 15 recognition being granted.

### E.   LEE HAS NOT CARRIED HIS HEAVY BURDEN UNDER FRCP 12(F) TO STRIKE THE AMENDED PETITION.

Lee's cursory motion to strike is governed under Federal Rule of Civil Procedure 12(f)

("FRCP 12(f)").  However, devoid from Lee's "motion" is any discussion or analysis under FRCP

12(f).  This is likely intentional given the high bar for granting FRCP 12(f) motions.

"With regard to [Rule 12(f) motions to strike], there appears to be general judicial

agreement, as reflected in the extensive case law on the subject, that they should be denied unless

the challenged allegations have no possible relation or logical connection to the subject matter of

the controversy and may cause some form of significant prejudice to one or more of the parties to

the action." *In re ATP Oil & Gas Corp.*, No. 12-36187, 2013 WL 5310194 (Bankr. S.D. Tex. Sept.

18, 2013).  Indeed, "motions to strike are disfavored" and are "rarely granted absent a showing of

prejudice to the moving party." *Id.* (*citing Zurich Am. Ins. Co. v. Watts Regulator Co.*, 796

F.Supp.2d 240, 246 (D.Mass.2011)).

Here, Lee has failed to carry his burden under FRCP 12(f).  More importantly, Lee cannot

demonstrate any prejudice given that the following facts are immutable: 1) the Corporate Debtors

have a right and interest in the Retainer; 2) the Retainer was deposited into Archer's Texas account

prior to the filing of the Amendment to the Petition; 3) the FRS may amend the Petition as a matter

of right until the case is closed; 4) Tang advanced the funds for the benefit of the Corporate Debtors

(and their many creditors), given that it takes time and is an arduous process to withdraw the

Corporate Debtors' funds from the HK OR accounts; 5) Section 109(a) does not contain language

---

**FOREIGN REPRESENTATIVES REPLY IN FURTHER SUPPORT OF MOTION FOR LEAVE TO FILE MOTION FOR   PARTIAL SUMMARY JUDGMENT AS TO THE 11 U.S.C. 109 JURISDICTIONAL ISSUE RAISED BY THE COURT AS TO THE CORPORATE DEBTORS' CHAPTER 15 PETITION AND OPPOSITION TO LEE'S MOTION TO STRIKE**

concerning who or where the Retainer came from nor did Congress think to include any provision concerning the timing of when the Corporate Debtors' property must lie in the U.S.; 6) as a matter of law, Courts are not concerned with the motivation or circumstances behind the Retainer; and 7) respectfully, it would make no sense at all and be harmful to the interest of judicial economy and uniformity (not to mention the many creditors of the Siu Fung Group in Hong Kong who are owed in excess of $1 billion in 2000 value)), to require the Corporate Debtors to file a second Chapter 15 petition. This is particularly the case where any Section 109 jurisdictional defect can be cured. In other words, the Court's adjudication of whether the Retainer alone satisfies Section 109 seems inevitable regardless of Lee's position.

Finally, as to Lee's "prejudice argument," the FRS respectfully submit that they are not abandoning any Section 109 arguments or concede that they have "rested" as argued by Lee's counsel. In fact, the FRS could not have rested on their case as they still have an expert to testify. Further, and subject to this Court's permission, the FRS could call Tang to testify on continued direct or rebuttal as to the new matters pertaining to the Retainer and the Amendment to Petition. Moreover, Lee could cross-examine Tang or call Tang himself to question him on the matter. Lee's counsel could take a remote video recorded deposition of Tang as to the matters at issue, which are not lengthy or complex.  In any event, Lee is not prejudiced, and any possible perceived prejudice is easily remedied.

---

**FOREIGN REPRESENTATIVES REPLY IN FURTHER SUPPORT OF MOTION FOR LEAVE TO FILE MOTION FOR   PARTIAL SUMMARY JUDGMENT AS TO THE 11 U.S.C. 109 JURISDICTIONAL ISSUE RAISED BY THE COURT AS TO THE CORPORATE DEBTORS' CHAPTER 15 PETITION AND OPPOSITION TO LEE'S MOTION TO STRIKE**

**CONCLUSION**

For all the foregoing reasons, the Court should grant the Motion and permit the FRS to file a motion for summary judgment, as the issue presented will be legal in nature, not a materially contested factual one.

Dated: May 16, 2025

By: */s/ Stephen M. Packman*
       Stephen M. Packman, Esquire
       Brian M. Gargano, Esquire
       **ARCHER & GREINER, P.C.**
       3040 Post Oak Boulevard
       Suite 1800-150
       Houston, TX 77056-6541
       Phone: (713) 970-1066
       Fax: (713) 583-9518
       spackman@archerlaw.com
       bgargano@archerlaw.com

       *Attorneys for the Authorized Foreign Representatives*

**CERTIFICATE OF SERVICE**

I hereby certify that, on May 16, 2025, a true and correct copy of the foregoing document was served via electronic mail and/or ECF on counsel to the Lee Debtor, the United States Trustee and any parties requesting notice pursuant to Rule 2002 of the Federal Rules of Bankruptcy Procedure.

       */s/ Brian M. Gargano*
       Brian M. Gargano

---

**FOREIGN REPRESENTATIVES REPLY IN FURTHER SUPPORT OF MOTION FOR LEAVE TO FILE MOTION FOR   PARTIAL SUMMARY JUDGMENT AS TO THE 11 U.S.C. 109 JURISDICTIONAL ISSUE RAISED BY THE COURT AS TO THE CORPORATE DEBTORS' CHAPTER 15 PETITION AND OPPOSITION TO LEE'S MOTION TO STRIKE**